**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREA MADDOX, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 10 C 3778 |
| v. | ) ) | Judge Ronald A. Guzmán |
| ADT SECURITY SERVICES, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued defendant, on behalf of herself and all others situated similarly, claiming that its imposition of a fee for early termination of the parties' contract breached the contract or unjustly enriched defendant, violates the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and makes defendant liable in tort for conversion and money had and received. Defendant has filed a motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons set forth below, the Court grants the motion.

## Facts

In January 2008, Plaintiff entered into a three-year contract with ADT for security services. (Compl. ¶ 14; *id.*, Ex. A, Contract.) The contract contains the following language in capital letters:

> Early Termination. You agree that the charges due under this contract are based on your agreement to receive and to pay for the services for three (3) full years. Accordingly, you agree that if you terminate this contract during its initial term, you will pay us an amount equal to 75% of the charges to be paid by you during the remaining initial three (3) year term of this contract. This amount is agreed upon damages and is not a penalty.

(Compl., Ex. A, Contract, Important Terms & Conditions ¶ 2.) In November 2009, plaintiff started having problems with the system that ADT was unable or unwilling to correct. (Compl. ¶¶ 15-20.) In December 2009, plaintiff cancelled the contract and received a $406.14 bill from ADT for early termination. (*Id.* ¶¶ 18, 21.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In the ICFA, breach of contract, unjust enrichment, conversion and money had and received claims, plaintiff alleges that she paid ADT the early termination fee ("ETF") it charged her. (*See* Compl. ¶ 37 (stating that her damage for the alleged ICFA violation is "the cost of paying the early termination fee"); *id.* ¶ 47 (stating that ADT "must return the illegal [contract] penalties collected from Plaintiff"); *id.* ¶ 55 (alleging that ADT was unjustly enriched by keeping the ETF money she paid); *id.* ¶¶ 59, 62 (alleging that ADT wrongfully collected money from her or received money that was wrongfully collected from her by someone else).) In her brief opposing the motion to dismiss, however, she judicially admits that "[she] did not pay the ETF." (Pl.'s Resp. Mot. Dismiss 4); *see McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 681 (7th Cir. 2002) (stating that a judicial admissions are "unequivocal statements as to matters of fact which otherwise would require evidentiary proof "). Because the claims asserted in Counts I-V require proof that ADT improperly collected money

2

from her, this admission dooms those claims. *See Oliviera v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002) (stating that an ICFA claim requires proof of actual damage); *IOS Capital, Inc. v. Phoenix Printing, Inc.*, 808 N.E.2d 606, 610 (Ill. App. Ct. 2004) ("Conversion is the unauthorized deprivation of property from a person entitled to its possession."); *M & O Insulation Co. v. Harris Bank Naperville*, 783 N.E.2d 635, 639 (Ill. App. Ct. 2002) (stating that "a plaintiff must present evidence that the defendant unjustly retained a benefit to the plaintiff's detriment" to prevail on an unjust enrichment claim); *Kaiser v. Fleming*, 735 N.E.2d 144, 147 (Ill. App. Ct. 2000) ("An action for money had and received is maintainable where defendant has received money which in equity and good conscience belongs to the plaintiff." (quotation omitted)); *Barille v. Sears Roebuck & Co.*, 682 N.E.2d 118, 121 (Ill. App. Ct. 1987) (stating that damage is an element of a contract claim).[1] Accordingly, the Court dismisses these claims without prejudice.

That leaves plaintiff's claim for a declaration that the ETF provision of the contract is void because it is unconscionable, an unfair business practice and constitutes a penalty. The ETF provision is procedurally unconscionable if, given the parties' relative bargaining power, it is "so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware [s]he was agreeing to it" *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 264 (Ill. 2006) (quotation omitted). The ETF provision is written entirely in capital letters and appears at the top of the first page of the "Important Terms and Conditions" section. (*See* Compl., Ex. A, Contract, Important Terms & Conditions ¶ 2.) Moreover, the first page of the contract alerts plaintiff to the terms and conditions section by stating, in capital letters just above plaintiff's signature, that:

---

[1]This admission also establishes that plaintiff is an inadequate class representative.

> The entire contract between the parties consists of this contract and all applicable attachments which together supercede any all other agreements, understandings, advertisements, or representations in connection with the services to be provided herein.
>
> You admit that you have read this page in addition to the attachment which contains important terms and conditions for this contract before signing. . . . A second sheet accompanies this sheet with additional terms and conditions.

(Compl., Ex. A 1.) Though, as plaintiff points out, the ETF is a non-negotiable term in a form contract, the Illinois Supreme Court has held that such facts do not render a contract term unconscionable:

> The Cingular service agreement is a contract of adhesion. The terms, including the arbitration clause and the class action waiver therein, are nonnegotiable and presented in fine print in language that the average consumer might not fully understand. Such contracts, however, are a fact of modern life. Consumers routinely sign such agreements to obtain credit cards, rental cars, land and cellular telephone service, home furnishings and appliances, loans, and other products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable.

*Kinkel*, 857 N.E.2d at 266. Thus, the ETF provision here is not procedurally unconscionable.

The ETF provision is substantively unconscionable if it is "so one-sided as to oppress or unfairly surprise an innocent party, [and there is] an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* at 267 (quotation omitted). The ETF term favors ADT, but viewed in light of the whole contract and the parties' relationship, it is not so one-sided as to be unconscionable. The contract contains, in addition to the EFT, several other provisions that favor ADT including those that: (1) allow ADT to increase its charges during the life of the contract; (2) limit plaintiff's damages; (3) excuse ADT from answering alarms that occur during the familiarization period, *i.e.*, the first week after installation; and (4) give ADT, but not plaintiff, an unqualified right of assignment. (Compl., Ex. A ¶¶ 3, 5-7, 18, 23.) However, the

4

contract also contains terms that favor plaintiff, including those that: (1) allow her to cancel the contract within three days of signing it; (2) permit her to terminate the contract without an ETF if ADT raises its rates; (3) allow her to reject the familiarization provision; and (4) provide a limited warranty. (*Id.* ¶¶ 2-3, 12, 18.) Further, plaintiff does not allege that she lacked the ability or sophistication to understand the contract terms, ADT coerced her into signing the contract or she had no meaningful alternatives for obtaining security service. Thus, plaintiff has not raised her right to relief on the substantive unconscionability claim above the speculative level as required by *Twombly*. The same is true for her claim that the ETF is a penalty and an unfair business practice. A contract imposes a penalty if it contains an agreed damage amount that "exceeds a reasonable estimate of the loss from breach." *Scavenger Sale Investors, L.P. v. Bryant*, 288 F.3d 309, 311 (7th Cir. 2002). Moreover, contractual penalties violate public policy, and such violations can be unfair business practices. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002) (stating that a business practice is unfair if, among other things, it "offends public policy"); *see* RESTATEMENT 2D OF CONTRACTS § 356 cmt. a ("Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy."). The ETF provision here requires plaintiff to pay 75% of the amount she would have paid during the remaining contract term. (Compl., Ex. A, Contract, Important Terms & Conditions ¶ 2.) That is 25% less than the amount she agreed to pay when she signed the contract and 25% less than the loss ADT sustained, and could recover in a breach of contract suit, as a result of the early termination. *See Collins v. Reynard*, 607 N.E.2d 1185, 1186 (Ill. 1992) ("The basic principle for the measurement of contract damages is that the injured party is entitled to recover an amount that will put him in as good a position as he would

have been in had the contract been performed as agreed."). Plaintiff does not allege that the ETF vastly overstates ADT's loss or explain why it would. Absent such allegations, she has not stated a viable claim for declaratory relief.

**Conclusion**

For the reasons set forth above, the Court grants ADT's motion to dismiss [doc. no. 16] and dismisses plaintiff's claims without prejudice. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend her complaint in accordance with this Order. If she fails to do so in that period, the Court will dismiss this suit with prejudice.

**SO ORDERED.**                            **ENTERED:**

**January 6, 2011**

*Ronald A. Guzman*

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**